[Civ. No. 264.   Third Appellate District.—March 30, 1907.]

## WELLS, FARGO & COMPANY, Respondent, v. JAMES P. McCARTHY et al., Appellants.

PLEADING—SUFFICIENCY OF COMPLAINT—REVIEW UPON APPEAL.—The sufficiency of a complaint to support the judgment must be reviewed on an appeal from the judgment.

ID.—COMPLAINT UPON FORECLOSURE OF MORTGAGE—SUFFICIENCY OF AVERMENT OF OWNERSHIP—ASSIGNMENT BY EXECUTRIX—PRESUMPTION UPON APPEAL.—Where a complaint upon the foreclosure of a mortgage alleged an assignment by the executrix of the will of a deceased person, ''pursuant to order duly made in the matter of the estate'' of such deceased person, without averring specifically what order was made in such matter, and also alleged an indorsement and delivery of the note to plaintiff by the executrix without recourse, and that plaintiff has ever since been, and now is, the holder and owner thereof, it must be presumed in favor of the judgment, in the absence of a bill of exceptions, that it was shown without objection that an order of sale and an order confirming the sale were properly made by the superior court, and that the cause was tried on the theory that the complaint was sufficient, and techni-

cal objections raised for the first time on appeal must be disregarded.

ID.—ATTEMPT TO ALLEGE ORDER OF COURT—LEGAL CONCLUSION—ULTIMATE FACT OF OWNERSHIP ALLEGED.—There being no attempt to allege the orders of the court, even if the allegation relative thereto be deemed a mere legal conclusion and surplusage, the allegation of ownership of the note and mortgage should be construed as an averment of an ultimate fact sufficient to supply the defect and to support the judgment.

ID.—PROPOSED AMENDMENT BY SUBSEQUENT LIENHOLDER—NOVATION—STATUTE OF LIMITATIONS—DISCRETION.—The court did not abuse its discretion in refusing to permit an amended answer to be filed more than four years after issue joined, so as to plead a novation of the indebtedness on the note and mortgage, which was barred by the statute of limitation as against a subsequent lienholder, and thus defeat the plaintiff's mortgage and unjustly assert priority of defendant's lien thereto.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order denying a new trial. J. M. Seawell, Judge.

The facts are stated in the opinion of the court.

Bishop, Wheeler & Hoefler, for Appellants.

E. S. Pillsbury, for Respondent.

BURNETT, J.—This action was brought to foreclose a mortgage. There were over one hundred defendants. Judgment was rendered in favor of plaintiff for nearly $200,000, and for the sale of the property. The pleadings are numerous and quite voluminous, covering about four hundred and fifty pages of the transcript. Certain of the defendants, not including McCarthy, the maker of the note, moved for a new trial on a bill of exceptions. The motion was denied. They appeal from the order denying their motion for a new trial, and also from the judgment.

By appellants two points are urged for reversal. One relates to the sufficiency of the complaint and must therefore be considered on the appeal from the judgment. (*Swift* v. *Occidental Min. etc. Co.*, 141 Cal. 164, [74 Pac. 700]; *Sharp* v. *Bowie*, 142 Cal. 462, [76 Pac. 62]; *Jensen* v. *Will & Finck Co.*, 150 Cal. 398, [89 Pac. 113].) The other point is involved in

a ruling of the trial court made during the progress of the trial, denying the application of the appellants to file an amended answer. We shall endeavor, as far as practicable within reasonable limits, to notice the suggestions and citations of counsel in support of their respective contentions.

There was a demurrer to the complaint, general and special. The special demurrer, however, was not addressed to the particular defect herein ably and vigorously assailed by appellants. The portion of the complaint which is the "storm-center" of the contention of the parties is as follows: "On or about the first day of February, 1894, pursuant to an order theretofore duly made by the said Superior Court in the matter of the estate of said Leland Stanford, deceased, the said Jane L. Stanford, as executrix of the last will and testament of Leland Stanford, deceased, for and in consideration of the sum of one hundred and twenty-one thousand and thirty and 36-100 dollars paid to her by this plaintiff on the said first day of February, 1894, executed and delivered to this plaintiff an instrument in writing, whereby she assigned to this plaintiff the said fourth promissory note, and all moneys due and to grow due thereon, and the said mortgage executed and delivered to the said Leland Stanford, on the 5th day of January, 1891, by the said James P. McCarthy, as aforesaid. Thereafter, to wit, on the same day, the said Jane L. Stanford, as such executrix, acknowledged the said assignment before Eugene W. Levy, a notary public in and for the city and county of San Francisco, so as to entitle the said assignment to be recorded, and thereafter, to wit, on the 13th day of February, 1894, the said assignment was recorded in the office of the County Recorder of the said city and county, in Liber 16 of Assignments of Mortgages, beginning at page 330. At the same time with the execution and delivery to this plaintiff by the said Jane L. Stanford of the said assignment, as aforesaid, she also endorsed and delivered to this plaintiff the said fourth promissory note, without recourse, and this plaintiff ever since then has been, and now is, the holder and owner thereof."

It is contended by appellants that the facts alleged do not show that the estate of Stanford ever parted with the title to the obligation, and hence that no cause of action is stated in behalf of plaintiff. The proposition is sound and will not be gainsaid that there must be some allegation sufficient, accord-

ing to the rules of pleading, to show title in plaintiff or else the general demurrer should have been sustained. The difficulty is in making an application of the elementary principles to the particular facts of the case.

To be more specific, appellants urge that ''where title to a chose in action is deraigned through a transfer alleged to have been made by an executrix, the complaint must show: 1. A power of sale conferred by will, or by an order of sale; 2. A sale pursuant to the power; 3. A confirmation of sale.'' Assuming that the order of court to which reference is made in the complaint refers to the order of sale, then it follows, according to appellants' argument, that there is no allegation whatever of the order of confirmation and that therefore one of the essential links in the chain of title is lacking. Section 1517, Code of Civil Procedure, is involved, which provides: ''No sale of any property of an estate of a decedent is valid unless made under order of the Superior Court, except as otherwise provided in this chapter. All sales must be under oath reported to and confirmed by the court before the title of the property sold passes.'' It is not controverted that the case at bar does not fall within the purview of the exception mentioned in said section.

In *Lindsay* v. *McInerney*, 62 N. J. L. 524, [41 Atl. 701], it is declared: ''With certain exceptions, not now pertinent, title and estate must always be pleaded with fullness and particularity. When claim is made by the assignee of a chose in action assignable at law by suit thereon in his own name, the fact of the assignment must be pleaded by direct averment.'' But, as well pointed out by respondent, in the Lindsay case, the fact was as stated by the court in its opinion: ''No assignment of the bond is *averred* or can be *gathered* even by *inference*. In the stating part of the pleading there is, generally, but not always, added to the name of Murphy, where occurring, the designation 'assignor as aforesaid,' and to that of the plaintiff the designation 'assignee as aforesaid,' *but there is no averment, direct or indirect, of any assignment of the bond*. . . . For want of such averment, this declaration must fall.'' The principle of the case is undoubtedly sound, but the situation was manifestly different from what is disclosed by the complaint herein.

The scope of *Stevens* v. *Bowers*, 16 N. J. L. 16, is shown by the following quotation: ''The plaintiff declares on a bond

made to two and sets out a title to it derived from one of them *only*, without showing how he became the sole owner, or by what authority he undertook to assign the whole bond."

In *Smith* v. *Dean,* 19 Mo. 63, it is held that in an action upon a bond by an assignee, a general allegation that the plaintiff is the legal holder is insufficient. The court said: "The plaintiff must state facts that give him the title to the bond, when, upon its face, the title appears to be in another."

*White* v. *Brown,* 14 How. Pr. 282, is somewhat similar. It was an action upon a promissory note. The payee in the note was William Rork and the only allegation connecting the plaintiff with the obligation was that he was then the *bona fide* owner and holder of the said note. The court said: "The complaint in this action does not show any title in the plaintiff to the note set up in it, as an indorser, or a party to the note or any right as such to maintain an action upon it." Hence, the demurrer was sustained. The last two cases are more directly in point than some of the others, but the allegations of the complaint in each were manifestly not so comprehensive as in the case at bar.

In this connection it is contended that the allegation of the execution of the assignment by the executrix is not sufficient because such execution by the executrix in the absence of an order of confirmation conveys no title. This doctrine is clearly established and must follow from the provisions of said section 1517, Code of Civil Procedure, and it has been so declared by the supreme court in *Horton* v. *Jack,* 115 Cal. 29, [46 Pac. 920] : "No sale of any property of the estate of a deceased person passes any title unless it is confirmed by the probate court. . . . Whether or not, then, this sale was, in fact, made to satisfy a debt of the estate, it is clear that neither the sale nor the supposed payment was sanctioned by the probate court, and that, therefore, the title to the property remained in the estate." (See, also, *Wickersham* v. *Johnston,* 104 Cal. 407, [43 Am. St. Rep. 118, 38 Pac. 89] ; *Bovard* v. *Dickenson,* 131 Cal. 162, [63 Pac. 162].)

Again, it is urged that the allegations as to the order—admitting it to refer either to the order of sale or of confirmation—is utterly insufficient because it is not a positive averment, but at most presents the facts by way of recital or as a legal conclusion. Certain cases are cited to show the insufficiency of this method of disclosing a material fact.

In *Christy* v. *Dana,* 42 Cal. 178, the court said: "On examining the answer, we find no new matter which was material. It avers, it is true, that the plaintiff's debt was *barred by the discharge in insolvency, but that is only a conclusion of law and not a fact."*

It is manifestly so, but that it was immaterial in that particular case is shown by the following declaration of the court: "It is evident the plaintiff was entitled to enforce his mortgage as against the land, *notwithstanding the personal liability of Dana for the debt may have been barred by the discharge."*

In *Wheeler* v. *West,* 71 Cal. 127, [11 Pac. 871], the answer, among other things, averred: "That these defendants . . . were actually engaged in working and mining said part of said claim, pursuant to a contract and agreement between plaintiffs and themselves." In support of this averment, over the objection of plaintiffs, evidence was received of a verbal contract between the parties. The objection was made upon the ground "that no contract was pleaded in the answer, and no issue raised on any contract." The court said: "A contract relied upon as a cause of action or defense to an action should, where opportunity is afforded, be pleaded either *in haec verba* or according to its legal intendment and effect. The attempted plea of the contract by defendant was by way of confession and avoidance of the wrongful acts charged in the amended complaint, and as pleaded amounted to no more than a conclusion of law. The objection to the evidence should, therefore, have been sustained." The circumstance that objection was made to the evidence differentiates that case from this. In the case at bar, all intendments being in favor of the judgment and the bill of exceptions not purporting to give the testimony or the proceedings except as bearing upon the question of amendment, hereafter considered—it must be presumed, if required to uphold the judgment, that it was shown, *without any objection whatever,* that an order of sale and an order confirming the sale were properly made by the superior court. It is true appellants filed a demurrer, but they should have objected to the evidence, in view of the nature of the defect complained of in the complaint, in order that plaintiff, if so advised, might have amended its pleading. Considering the condition of the record, it must be assumed that the cause was tried upon the theory that the complaint was sufficient,

and it is proper to invoke the rule to the effect that technical objections raised for the first time on appeal must be disregarded. (*Greiss* v. *State Investment Co.,* 98 Cal. 242, [33 Pac. 195]; *Abner Doble Co.* v. *Keystone,* 145 Cal. 490, [78 Pac. 1050].)

Appellants earnestly contend that this consideration injects into the case a false quantity, that the presumption if indulged is utterly without importance because nothing can aid a complaint which fails in a material and necessary averment. It is true that it is of no consequence whether such evidence was admitted without objection or not if there is an absolute failure, and no attempt to allege some material fact, but it is held by the authorities that it does become of moment when there is an imperfect exhibition in the complaint of such fact, which is the case here.

In *Burkett* v. *Griffith,* 90 Cal. 531, [25 Am. St. Rep. 151, 27 Pac. 527], the rule is stated as follows: "Argumentative pleading is no more permissible under the code than it was at common law. *Matters of substance must be alleged in direct terms, and not by way of recital or reference.* Whatever is an essential element to a cause of action must be presented by a distinct averment, and cannot be left to an inference to be drawn from the construction of a document attached to the complaint." In that case the demurrer was both general and special. It was sustained by the trial court and upheld by the supreme court. The complaint was radically defective in several respects, and the ruling was undoubtedly correct.

In *People* v. *Jones,* 123 Cal. 299, [55 Pac. 992], it is declared: "It is a rule of pleading, both in civil and criminal actions, that the lack of direct and positive averments of a fact cannot be supplied by intendment or implication, and where the fact is stated only *argumentatively,* or by way of recital or reference, it is insufficient." In that case, the recital condemned was: "R. A. Jones, acting as the agent of said Kempling and wife." No doubt the court stated the general rule correctly, but it seems that it was not necessary to the decision, because the court proceeds: "But aside from this view of the matter, we cannot regard the answer of defendant as constituting perjury." So that the demurrer was, in view of the court, properly sustained independently of the formal defect in the allegation of the agency.

In the case of *Knox* v. *Buckman Contracting Co.*, 139 Cal. 598, [73 Pac. 428], the supreme court enforces the rule in reference to the allegation of nonpayment of promissory notes which was held controlling in former cases. It is there stated: "The action is upon several promissory notes, but the only averment in the complaint as to a breach of appellant's contract to pay any one of the notes is this: 'That the whole of said note is owing from said defendants to said plaintiff.' It has been frequently held by this court that such an averment is not an averment of the fact of nonpayment, and that a complaint in such a case which contains no other averment as to nonpayment does not state facts sufficient to constitute a cause of action." No doubt the court felt constrained by its former decisions in that particular class of cases, although it must be admitted that the rule is greatly relaxed in the case of *Penrose* v. *Winter,* 135 Cal. 289, [67 Pac. 772], wherein, as stated in the syllabus, it is held that: "In an action to foreclose a mortgage, an averment in the complaint that a specified sum is 'now due and owing,' *though the statement of a legal conclusion, in which the material fact of nonpayment is implied, is sufficient to sustain a judgment by default.*" And, furthermore, in the discussion of that case by the learned chief justice, he submits some reflections directly applicable to the case at bar: "The second objection to the judgment is that the complaint shows the note and mortgage to have been given to John S. Craig, described in both instruments as the guardian of Ora and Rebecca Eiler, minors, etc.; that this shows that Craig had the legal title to the note, *and there is no allegation of an assignment to plaintiff. This objection, I think, is answered by the same reasoning that answers the objection that there is no allegation of nonpayment. It is true there is no direct allegation of an assignment, but there is an allegation which implies an assignment.* It is alleged that the plaintiff, as the guardian of said minors, and as successor of Craig, etc., is now the lawful owner and holder of the note and mortgage. If an assignment was necessary to make plaintiff the lawful owner and holder of the mortgage, then he has alleged a legal conclusion which implies an assignment, and this after judgment by default is sufficient to support the judgment. It may be added that the objection last considered would come with more force from the maker of the note and mortgage than from the appellant." The logic of the opinion

and of some others which will be considered is that under certain circumstances the allegation of what is usually regarded as a *legal conclusion* supplies the want of an averment of a material fact, and renders the judgment safe from attack on the ground that the complaint does not state facts sufficient to constitute a cause of action. What difference in this respect can there be between a default judgment and a judgment after trial? It needs no citation of authorities to support this proposition—and, indeed, it is so implied in section 434, Code of Civil Procedure—that the objection of insufficiency of facts can be made at any time. The defendant is not required to appear in the trial court and file a demurrer in order to make the objection available, and if the objection can be made at any time while the cause is in the course of adjudication, it can be made with equal force after judgment in the trial court as before. And if the allegation of a legal conclusion is an answer to the objection when made after judgment by default, it must be a sufficient answer when the objection is raised by a general demurrer before trial. Mr. Justice McFarland was undoubtedly correct in his dissenting opinion in the Penrose case, *supra,* in the following statement: "And, of course, the objection that a complaint does not state facts sufficient to constitute a cause of action may be taken at any time. Such an objection is not waived by default." Again, in the case at bar, it would seem to be sacrificing the spirit of the law to the letter to hold that the allegation that the plaintiff is the owner and holder of the note is simply a conclusion of law, and must be entirely disregarded, because, perchance, the plaintiff has attempted, although ineffectually, to allege certain facts by virtue of which he has become such owner and holder. That course would be rather to allow technical objections to the judgment "to prevail against its substantial justice." Every purpose of orderly and correct procedure would be subserved by holding that the allegation of ownership is that of an ultimate fact, notwithstanding an attempt to deraign title. If necessary to inform the antagonist of the source or grounds of plaintiff's title, more specific allegations should be required when the complaint is challenged by a special demurrer or a motion to make more certain if the latter pleading is to be countenanced. The reason for holding that an allegation of ownership is sometimes regarded as a conclusion of law, as stated in *Gruwell* v. *Seybolt,* 82 Cal.

7, [22 Pac. 938], is as follows: "Where, however, the pleader sets forth specifically the links in his chain of title, a general allegation of ownership will be treated as a mere conclusion from the facts stated, and will not cure any defect in the chain relied upon. It will be presumed that every fact has been alleged which can be proven." If when an attempt is made to deraign title the reason for holding that an allegation of ownership is a legal conclusion is based upon the presumption that every fact has been alleged which can be proved, the reason of the rule fails, and, therefore, the rule itself does not apply when, instead of facts, conclusions of law are alleged in the deraignment of title. There is here an attempt to allege the orders of the court. If the allegation respecting them should be considered a mere legal conclusion, then the allegation of ownership should be construed as an averment of a fact and sufficient to uphold the judgment.

The case of *Marsh* v. *Superior Court*, 88 Cal. 596, [26 Pac. 962], cited by appellants, is manifestly different. There it is held that "the averment that the petition filed in the superior court asking for the removal of the said Whiteside 'contained no allegation of any legal cause why said Whiteside should be removed' is but the statement of a conclusion of law, and is not equivalent to a direct allegation that said petitioner did not charge that said Whiteside had violated or was unfit to execute the duties of trustee under said deed of assignment." "Legal cause" is necessarily the deduction from some act, event or circumstance, while "owning," and especially "holding" describe and imply an act, event and circumstance. Can it be said here that there is an entire absence of averment of the transfer of title from the estate of Stanford to plaintiff, so that no evidence could be received of that fact at the trial? We must answer that question in the affirmative to reverse the judgment on the ground of the insufficiency of the complaint. Respondent, in its opening brief, claims that "pursuant to an order theretofore duly made," etc., does not refer to the order of sale, "but concisely pleads the ultimate fact of the order pursuant to which the transfer was and alone could be made, that is to say, the order of confirmation." In its supplementary brief, the position is shifted, and it is contended that it refers to the order of sale. But it only illustrates the element of uncertainty involved in the form of expression. It is uncertain whether it refers to one or the other, and for

that reason is subject to a special demurrer. But does the
fact that it is in the form of a recital, or in the nature of a
legal conclusion, preclude the court from considering it in
order to uphold the judgment as against a general demurrer?

In *Hill* v. *Haskin*, 51 Cal. 177, it was contended by appellant
that the complaint was radically defective because it did not
aver an offer to account, on the ground that this was a condi-
tion precedent to the right to maintain an action. The su-
preme court said: "But inasmuch as the plaintiff could not
legally demand payment of the defendant until he had first
offered to account, the averment that *'he made due demand'*
is a sufficient allegation in the absence of a special demurrer
to let in proof of the offer to account. It was but a defective
statement of a material fact. Instead of alleging the fact
directly, it was stated only inferentially, and might have been
demurred to on this ground. . . . But, having proceeded to
trial without interposing the objections, it was too late after-
ward for the defendant to raise the point that the offer to ac-
count ought to have been averred with greater precision and
directness." It is somewhat difficult to see how an allegation
that he made due demand is even an imperfect attempt to
state that he "offered to account," but the decision indicates
a just and wise purpose of the higher court to avoid technical-
ities in furtherance of justice.

In *Chase* v. *Evoy*, 58 Cal. 352, an allegation that "the claim
was duly verified by the oath of plaintiff in the *form pre-
scribed by law*" was held to be sufficient as against a general
demurrer.

In *Grant* v. *Sheerin*, 84 Cal. 198, [23 Pac. 1094], it was
alleged that "plaintiff as such executrix has demanded from
defendant an accounting of said sale and the payment to her
of the purchase price of said monument. And defendant has
refused, and still refuses, to account for or pay the same or
any part thereof." There was no allegation, except inferen-
tially, of nonpayment. The supreme court, however, said:
"In our opinion, the complaint in this case stated a cause of
action, and it was sufficient when tested only by a general
demurrer."

From *Alexander* v. *McDow*, 108 Cal. 29, [41 Pac. 24], we
make this quotation: "Thus, while a judgment will not relieve
from the entire absence of a necessary averment, it will cure
defects in all such averments as may by fair and reasonable

intendment be found to have been pleaded although defec-
tively. The gravamen of the charge against the complaint is
that it fails to make the necessary averment of assignment to
plaintiff. . . . Assignment of it (the note), therefore, became
necessary to convey title. But such an instrument may be as-
signed by indorsement as fully as may a negotiable instrument.
The assignment is pleaded in the complaint with Caesarian
brevity by the single word *indorsed*, followed by the quota-
tion (Pay to Jules Alexander. Levy and Alexander). This,
however, is aided by the subsequent statement that the prin-
cipal and interest are due from defendant to plaintiff. By
fair, if not by necessary, implication, we learn from this that
Levy and Alexander assigned the instrument by indorsement
and delivered it to plaintiff, and that plaintiff then became
and now is the owner and holder of it. So construed the com-
plaint will support the judgment, although''—Mr. Justice
Henshaw somewhat facetiously, but significantly, remarks—
''it must be added that the weight is about all it is capable
of sustaining.''

And in *City of Santa Barbara* v. *Eldred*, 108 Cal. 297,
[41 Pac. 410], the supreme court, speaking through Mr. Justice
Temple, states the rule as follows : ''The action was brought to
collect a municipal tax, and to the complaint a general demur-
rer was interposed. It was overruled and defendant an-
swered. He now specifies a great many alleged defects in the
complaint. Many of them are, in effect, that the complaint is
ambiguous or uncertain. Such objections cannot be reached
on general demurrer. Nor can the other objections, which
merely amount to criticisms upon the sufficiency of the state-
ment, as that the essential facts *appear only* inferentially, or
as *conclusions of law* or by *way of recitals* prevail on *such de-
murrer. There must be a total absence of some material fact
to justify us in sustaining a demurrer of this character.''*
This decision is severely criticised by appellants. They de-
clare it to be against every other authority in England or
America, in holding that a conclusion of law may protect a
complaint from the attack of a general demurrer. It may be
that other decisions do not so hold in so many words, but there
are well-considered cases holding in effect that where there
is an ineffectual attempt to deraign title the allegation of
''holding and ownership'' may be regarded in the determina-
tion of the question whether the complaint states a cause of

action.  We have already cited two of those cases from this
state.  There is, no doubt, some inconsistency shown in the
judicial literature upon this subject, but the later cases hold
as we have stated.

In *Estate of Behrens,* 130 Cal. 416, [62 Pac. 603], as stated
in the syllabus, it is held that "upon the contest of the pro-
bate of a will, the description of the contestants as 'brother
and sister and heirs at law' of the deceased, in the introducing
sentence of their opposition to the probate, without any direct
averment of their heirship, constitutes an inferential averment
thereof, which, in the absence of a demurrer to the opposition,
will be held sufficient after judgment." It is.true there was
no demurrer to the opposition, but the same result must have
been reached in the presence of a general demurrer.

There are many other cases to the same effect.  Admittedly,
none of the decisions cited—and they have all been exam-
ined—presents identically the same phraseology as we find in
the complaint before us.  But a fair consideration of the au-
thorities, keeping in view that "the court must," as provided
in section 475, Code of Civil Procedure, "in every stage of an
action, disregard any error, improper ruling, instruction, or
defect, in the pleadings or proceedings which, in the opinion
of said court, does not affect the substantial rights of the
parties," leads to the conclusion that the complaint is not so
defective as to be insufficient to support the judgment.  In
view of the technical nature of the objections urged and the
manifest justice of the determination of the cause reached
by the trial judge, if deemed necessary to support the judg-
ment, any appellate court should and could hold, without
doing violence to any rule of pleading or principle of equity,
that as against a general demurrer, there was either a suffi-
cient attempt to allege the orders of the probate court, or that
if the form of pleading adopted in that behalf constitutes
simply a legal conclusion and such legal conclusion must be
disregarded, then the defect is supplied by the averment of the
ultimate fact that plaintiff is the owner and holder of the note
in controversy.  Any other view, it seems to us, would be a
reproach to the law and almost a wanton infraction of the
principles of equity.

To understand the significance of the other objection, the
following facts must be observed: The complaint contains the
usual allegation that certain defendants, including the appel-

lants, claim some right or interest in the property, but that it is subsequent and subordinate to plaintiff's lien. Appellants answered this allegation as follows: "Defendants admit that they have and claim, and that each of them has and claims, an interest in certain portions of the property described in the said complaint, but deny that their said interest. or that the interest of any of them, is subsequent or is subordinate or is subject to the lien of the said mortgage." The allegation of the indorsement and delivery of the promissory note contained in the complaint was denied in said answer as follows: "Defendants deny that on or about February 1st, 1894, or at any other time, or at all, Jane L. Stanford indorsed and delivered or indorsed or delivered to the said plaintiff the said fourth promissory note, described and set forth in paragraph 15 of the said complaint, and that the said plaintiff ever since has been and now is the owner and holder or owner or holder of said note." The answer further denies "that there is any sum or amount whatever now due, unpaid or owing upon the said promissory note."

By reason of the foregoing allegations and denials appellants claimed the right at the trial to introduce evidence of a novation, or, as it appears in the bill of exceptions: "That while plaintiff was putting in its case the defendants hereinafter named repeatedly endeavored upon cross-examination to introduce in evidence the agreement set out in the proposed amended answer hereinafter contained, but objection being made by plaintiff *on the ground that said matter was not cross-examination, the same was ruled out.* That after the close of plaintiff's case, said defendants hereinafter named proceeded to and did offer in evidence, without any objection, their respective chains of title and claims to, in or upon the property involved in this action." Thereupon said defendants offered in evidence the agreement set out in said proposed amended answer, which was offered, so counsel stated, "for the purpose of showing that said note had been supplemented, changed and modified and that the same is no longer a valid or existing obligation of any kind or character, that being a new and different agreement substituted in this suit." In response to a question by the court, counsel for appellants stated that the paper in question constituted an agreement of the parties in interest whereby the amount due is $121,000, instead of $112,500, as provided in the note upon which the suit was

brought, and that it was to bear a greater rate of interest and that the amount due was to be paid in two installments instead of one, etc. In other words, the instrument is one which shows a complete novation as to this promissory note. ''First, as to the change in the amount of the note, and, second, as to the times of payment, and the payments, and the rate of interest which it shall bear, and as to the terms upon which this mortgage shall be released, and providing that the mortgage, as modified, shall stand as security for the new amount, and in the event of foreclosure interest shall be given at the rate indicated.'' Upon objection being made upon the ground that it was not addressed to any issue in the case, the court declined to admit the evidence, holding that it was not admissible under the pleadings, and should be specially pleaded. Subsequently appellants asked leave to file an amended answer setting up this agreement and alleging in appropriate phraseology that it was executed as a novation and also setting up the bar of the statute of limitations against the enforcement of this new obligation. The court sustained plaintiff's objections.

Appellant Henshaw then made application to file an amended answer setting out the same agreement as a novation and alleging that by virtue of the novation his own mortgage became a first lien upon the premises, and that any claim, lien or demand of the plaintiff was subsequent and subordinate thereto, and also ''that on the 14th day of January, 1896, the defendant duly commenced an action in the Superior Court of the City and County of San Francisco against the plaintiff above named, and against the defendants, James P. McCarthy and William Fitzhugh, and others, for the purpose of foreclosing his aforesaid mortgage; that said action is still pending and undetermined.'' In support of the opposition to the application, counsel for plaintiff stated: ''This is the first time that this instrument has been brought into this action. The answer of these defendants was filed on the 2d day of April, 1899. This action was begun on the 4th day of January, 1898. Their answer was filed more than four years ago. In the meantime, if there has been a novation of this original obligation by reason of the execution of this agreement, any cause of action stated in this amendment on that new obligation has become barred by the statute of limitations.'' Besides, it was contended that it was unconscionable on their part—never having apprised the plaintiff of it—to set up a

defense which would deprive plaintiff of its cause of action. The court, in sustaining the objection, stated: "Mr. Henshaw is not in privity with this contract, or with any of the parties to the contract. Whatever rights he acquired were acquired before this was executed. If a suit was brought upon this agreement and he was made a party, and he alleged that he had a mortgage prior to the making of the agreement, he would plead himself out of court. If the defense were allowed it would have the effect of making his mortgage previous to the plaintiff's, and it would defeat the rights of all of the defendants. Now, here is a party who has known of this agreement and has not pleaded it, and now to ask to plead it would have the effect of giving him a prior lien, and I think it would be an inequitable thing to do." It would seem that any judge would take the same view of it. It is true, as contended by counsel, that courts should be liberal in allowing amendments for the purpose of aiding and facilitating the trial of causes upon their merits. Ordinarily, an application to amend a pleading to present more fully or accurately a cause of action or a defense should be granted upon such terms as shall appear just. In Farmers' Nat. Gold Bank v. Stover, 60 Cal. 396, it is said: "An amendment of pleadings should be allowed at any stage of the trial when it is necessary for the purpose of justice." (See, also, Guidery v. Green, 95 Cal. 630, [30 Pac. 786]; Crosby v. Clark, 132 Cal. 1, [63 Pac. 1022]; McDougald v. Hulet, 132 Cal. 155, [64 Pac. 278]; Marr v. Rhodes, 131 Cal. 267, [63 Pac. 364]; Carters v. Lothian, 133 Cal. 451, [65 Pac. 962].)

But it is clearly established by the authorities that the appellate court will not reverse an order denying leave to amend except for abuse of discretion. As said in San Joaquin Valley Bank v. Dodge, 125 Cal. 84, [57 Pac. 687]: "Amendments to pleadings are left much to the discretion of the court below, and it is presumed that such discretion will always be exercised in furtherance of justice and with the end in view of disposing of cases upon their merits. We cannot interfere except in cases where such discretion is abused."

Such amendments, as well observed, are allowed in the interests of justice and not simply to give the party a technical advantage. (Code Civ. Proc., sec. 473.)

In Cooke v. Spears, 2 Cal. 412, [56 Am. Dec. 348], in discussing the refusal of the court below to allow an amendment

to set up the bar of the statute of limitations, it is said: "If the statute of limitations had been pleaded in the first instance, there would have been no ground to have objected to it, and the court would have had no legal discretion to have ordered it to be stricken out. But having been omitted when the application to amend was made, the first question certainly presented was, Will it be in furtherance of justice? Such is the language of the statute; such clearly was the intent of the law. But we take it that the judge below was not bound to allow the amendment, unless it would further the ends of justice. He refused it, doubtless believing the contrary, and we think he did right."

In *Page* v. *Williams,* 54 Cal. 563, the defendant in an action upon certain promissory notes, after the plaintiff had rested his case and the defendant had given some evidence, offered to show that the notes were given without consideration; and upon the court refusing to hear such proof under the pleadings, defendant asked leave to file an amended answer alleging want of consideration. The court refused to permit it on the ground that the case had been at issue nearly two years, and the trial had already commenced and new issues would be tendered by the amendment. The supreme court said: "In our opinion, the court properly exercised its discretion in refusing to allow this amendment." (See, also, *Harding* v. *Minear,* 54 Cal. 502; *Bank of Woodland* v. *Heron,* 122 Cal. 108, [54 Pac. 537].)

In the case at bar the effect of allowing the amendment, if supported by the evidence, would have been to defeat plaintiff's claim, and the court was justified in treating it as an application to amend in order to plead the statute of limitations.

Appellants contend that "the idea of administering rules of pleading with a view of reaching an end different from that attained by the substantive law and thus working out an indefinable justice, is illogical and absurd." But the vice of the statement is in the implication that the degree and quality of justice are determined by the method adopted in its pursuit.

That there is a difference between legal and equitable rights and that a distinction is properly made between purely statutory and moral considerations in the enforcement of obligations and in the application of remedies, no one will probably

deny.   If no such distinction exists the judges will have to recant many errors and our whole judicial system will need reconstruction.

Appellants invite us to a discussion of the phrase "furtherance of justice."   Obviously it is "such justice as the law administers when correctly applied."   (*Stringer* v. *Davis*, 30 Cal. 322.)   But that description does not and cannot prescribe what proceeding shall be taken by a trial court in every case where an amendment of a pleading is sought.   In fact, the term undefined is probably defined the best as "beauty unadorned is adorned the most."   Each particular case must be left to the wise discretion and enlightened conscience of the chancellor.

Appellants seem to think that it is "in furtherance of justice" to promote their interest at whatever cost to someone else.   They have apparently forgotten the qualification of the rule that amendments should be allowed in furtherance of justice when it can be *done without prejudice to the substantial rights of others.*   Assuredly, after an action had been pending for five years, it was no abuse of discretion to refuse to allow an amendment and thereby preserve to plaintiff the right to enforce a just obligation to the amount of nearly $200,000, and to subject to the prior claim of plaintiff a mortgage executed subsequently, when the effect of granting the amendment might be to defeat plaintiff's claim altogether, and to give appellants an advantage which the evidence does not show they needed.   The ability and industry of counsel for appellants compel admiration, but to uphold their contention, in our opinion, would be a travesty of justice rather than in furtherance thereof.

The judgment and order denying the motion for a new trial are affirmed.

Chipman, P. J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 31, 1907.